IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

WINNIE THOMPSON,

    Plaintiff,

vs.                                        CASE NO. 3:10-cv-318/RS-EMT

CINCINNATI INS. CO.,
a foreign corporation,

    Defendant.
_____/

## ORDER

Before me is Defendant's Motion for Summary Judgment (Doc. 69), Plaintiff's Response (Doc. 82), and Defendant's Reply (Doc. 87).

### Standard of Review

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c). In other words, the basic issue before the court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S. Ct. 2505, 2512 (1986). The moving party has the burden of showing the absence of a genuine issue as to any material fact, and in deciding whether the movant has met this burden, the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *Fitzpatrick v. City of Atlanta*, 2 F.3d

1112, 1115 (11th Cir. 1993). Thus, if reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment. *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992) (*citing Mercantile Bank & Trust v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985)). However, a mere 'scintilla' of evidence supporting the nonmoving party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party. *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (*citing Anderson*, 477 U.S. at 251).

## Background

Defendant's Statement of Undisputed Material Facts (Doc. 71) details the critical events that are the subject of this dispute. On October 15, 2007, an automobile accident occurred between the Plaintiff and the Decedent Mr. Ronald Chavers. At this time, Defendant and Plaintiff were bound by the terms of an insurance contract with bodily injury limits of $100,000.00 per person. Defendant was notified of the accident shortly after it occurred. *Id.* at 1-2.

On October 16, 2007, a representative of Defendant contacted Plaintiff to initiate an investigation and determine Plaintiff's potential liability. On October 17, 2007, the policy limits of $100,000.00 were placed in reserve. *Id.* at 2. On October 18, 2007, Mr. Chavers died from the injuries sustained in the accident. Also on October 18, Plaintiff's attorney sent a letter to Defendant's representative requesting that Defendant "offer to Mr. Chavers' estate, his wife and son, and any other proper party, the policy limits under

her [Thompsons's] policy and obtain a release of all liability for Mrs. Thompson." *Id.* at 3.

On October 25, 2007, Defendant's representative continued the investigation by contacting the Florida Highway Patrol and requesting a copy of the FHP's accident report. That same day, October 25, Defendant's representative made a first attempt to contact potential claimants by sending a letter to "the family of Ronald Chavers." *Id.* at 3-4. This letter informed the Chavers' family that Mr. David DeMara, a senior claims representative, was handling the case and that Defendant "welcome[d] your call so we may handle any claim you have." *Id.* at 5.

On November 15, 2007, Defendant's representative placed a telephone call to the Chavers' home and left a telephone message. Defendant claims that the purpose of this call was to initiate settlement discussions. A second letter was also sent on November 15, 2007 "to follow up . . . concerning any claims you might have." *Id.* at 6-7.

On January 10, 2008, Defendant's representative placed a second telephone call to the Chavers' home and again left a message. Defendant claims that the purpose of this call was to initiate settlement discussions. *Id.* at 7-8.

On April 1, 2008, Defendant's representative placed a third telephone call to the Chavers' home and again left a message. On April 7, 2008, the Decedent's widow, Ms. Katie Chavers, made a call to Defendant's representative and left a voicemail message. On April 8, 2008, Defendant's representative responded to the voicemail by placing a telephone call to the Chavers' home. The Defendant's representative left a message. *Id.* at 8.

On April 8, 2008, Ms. Chavers, as personal representative of the Decedent, filed a wrongful death lawsuit against Plaintiff. This action resulted in a finding of liability against Plaintiff in the amount of $3,642,750.

On June 25, 2008, unaware of the pending litigation, Defendant's representative sent a third letter to the Chavers' home. *Id.* at 9-10.

On July 7, 2008, Defendant's representative received a letter from Plaintiff's attorney indicating that a lawsuit had been filed by the Chavers' estate against Plaintiff. Defendant's representative attempted to contact the Chavers' attorney.

On July 10, 2008, Defendant tendered the policy limit by a check made payable to "Katie Salinas Chavers, as Personal Representative of the Estate of Ronald Steve Chavers, and Robert Kerrigan, their attorney." Ms. Chavers declined to accept the check. *Id.* at 11.

**Analysis**

Under Florida law, an insurer's conduct in bad faith claims is judged by the "totality of the circumstances." *Snowden v. Lumbermens Mut. Cas. Co.*, 358 F. Supp. 2d 1125, 1127 (N.D. Fla. 2003). The facts indicate that Defendant made numerous attempts to contact the Decedent's representative by sending letters and making telephone calls. These attempts, which went unheeded, came after Plaintiff demanded that Defendant "offer to Mr. Chavers' estate, his wife and son, and any other proper party, the policy limits under her [Thompsons's] policy and obtain a release of all liability for Mrs. Thompson." (Doc. 71, p.3). The essence of the communications from Defendant to the Chavers' estate was an offer to negotiate settlement. The letters did not contain specific

information regarding policy limits or an offer to tender those limits. While such an offer is not dispositive, it does speak to the issue of bad faith. *See e.g., Boateng v. GEICO Gen. Ins. Co.*, 2010 U.S. Dist. LEXIS 123449 (S.D. Fla. 2010) (finding offer to tender policy limits within week of accident sufficient to grant summary judgment in favor of insurance company). As is ordinarily the case, the question of bad faith is one for the jury. *Berges v. Infinity Ins. Co.*, 896 So. 2d 665, 672 (Fla. 2004).

The Motion for Summary Judgment (Doc. 69) is **DENIED**.

**ORDERED** on April 11, 2011.

/S/ Richard Smoak
**RICHARD SMOAK**
**UNITED STATES DISTRICT JUDGE**